## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHIRLEY A. GOODE and SEAN GOODE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No.1:21-CV-11457-GAO |
| ) | |
| DANIEL SMITH and CITY OF BOSTON ) | |
| ) | |
| Defendants. ) | |

## DANIEL SMITH'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

## I.    INTRODUCTION

Defendant Daniel Smith ("Officer Smith") respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) to have this Honorable Court dismiss the claims against him (Counts 1, 2, and 4). This lawsuit stems from defendant Officer Smith's shooting of Plaintiffs' dog. Plaintiffs, Shirley A. Goode and Sean Goode, bring their complaint against the Officer Smith and his employer, the City of Boston (the "City") alleging five causes of action: (i) violation of 42 U.S.C. § 1983; (ii) violation of M.G.L. c. 272, § 85A; (iii) negligence; (iv) intentional infliction of emotional distress; and (v) negligent infliction of emotion dismiss. Because Counts 1, 2, and 4 either fail to state a claim, or Officer Smith is immune from liability, the claims against him must be dismissed.

1

## II.    <u>BACKGROUND</u>

As alleged in the Complaint: On July 4, 2018, Officer Smith was on official duty as a police officer for the City of Boston. (Complaint, ¶¶ 7-8.) That evening, Officer Smith reported to the intersection of Dunkeld Street and Fayston Street in Dorchester, Massachusetts, and parked in front of 72 Fayston Street. (<u>Id.</u> at ¶¶ 9-10.) Around 10:30 p.m., the Plaintiffs' unleashed dog[1] was wandering on Fayston Street without either of the Plaintiffs. (<u>Id.</u> at ¶ 11.) Officer Smith was outside his vehicle when Plaintiffs' dog began to approach him. (<u>Id.</u> at ¶¶ 11, 13-14.) Despite several attempts by one of the Plaintiffs to call their dog back, the Plaintiffs' dog continued to approach Officer Smith. (<u>Id.</u> at ¶¶ 12-14.) When the Plaintiffs' dog was within a few of Officer Smith, he discharged his firearm which resulted in the death of Plaintiffs' dog.  (Id. at ¶¶ 14-15.)

## III.    LEGAL ARGUMENT

### A.    **Standard of Review**

A complaint or count therein must be dismissed where it fails to state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor. <u>See</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).  However, this tenet does not apply to legal conclusions.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009). Mere recitals of the elements of a cause of action, supported only by conclusory

---

[1] Officer Smith respectfully requests that the Court take judicial notice that the breed of Plaintiffs' dog was a Pitbull. <u>See</u> Fed. R. Evid. 201.

statements, do not suffice.  See id. (Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 545 (citations omitted).  A plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).  "Although pleading standards are minimal, the First Circuit requires more than conclusions or subjective characterizations."  Columbus v. Biggio, 76 F. Supp. 2d 43, 52 (D. Mass. 1999) (citations and quotations omitted).  A complaint will not "suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Twombly, 550 U.S. at 557 (quotations omitted).  "Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation."  Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).  As discussed below, Plaintiffs' claims against Officer Smith should be dismissed for failing to meet the Twombly pleading requirement.

### B.    Officer Smith is Entitled to Qualified Immunity.

An unconstitutional seizure under the Fourth Amendment must be an "intentional acquisition of physical control."  Eldredge v. Town of Falmouth, 662

F.3d 100, 105 (1st Cir. 2011) (emphasis omitted) (quoting <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596 (1989)). The killing of a person's pet dog by the government without that person's consent is a seizure under the Fourth Amendment. <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 270-1 (1st Cir. 2009); <u>see also</u> <u>Wheeler v. Quartino</u>, No. CIV.A. 12-40121-TSH, 2014 WL 1908931, at *1 (D. Mass. May 12, 2014).

"Government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)); <u>see also</u> <u>Kelley v. LaForce</u>, 288 F.3d 1, 6 (1st Cir. 2002) (qualified immunity available as defense to § 1983 civil liability claims). "The protection of qualified immunity applied regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (quoting <u>Groh v. Ramirez,</u> 540 U.S. 551, 567 (2004)). This doctrine of qualified immunity protects such public officials so that they may act freely "without fear of retributive suit for damages except when they should have understood that particular conduct was unlawful." <u>Limone v. Condon</u>, 372 F.3d 39, 44 (1st Cir. 2004) (citations omitted). The qualified immunity determination is to be determined as soon as possible because "[t]he privilege is an immunity from suit rather than a mere defense in liability and, like an absolute

immunity, it is effectively lost if a case is erroneously permitted to go to trial."
Saucier v. Katz, 533 U.S. 194, 200-201 (2001) (citing Mitchell v. Forsyth, 472 U.S.
511, 526 (1985)). This tenant even applies to Fourth Amendment claims based on
the killing of a person's pet dog by the government.  See Maldonado v. Fontanes,
568 F.3d at 271.

    To determine whether an official violated clearly established rights of which
a reasonable person would have known, the First Circuit follows "a two-prong
analysis for determining whether defendants are entitled to qualified immunity,
asking '(1) whether the facts alleged or shown by the plaintiff make out a violation
of a constitutional right; and (2) if so, whether the right was 'clearly established' at
the time of the defendant's alleged violation.'" Diaz-Bigio v. Santini, 652 F.3d 45, 50
(1st Cir. 2011) (quoting Pearson, 129 S. Ct. at 811).  "The second prong, in turn, has
two parts: (a) whether the legal contours of the right in question were sufficiently
clear that a reasonable official would have understood that what he was doing
violated that right, and (b) whether the particular factual violation in question
would have been clear to a reasonable official."  Id. (Citing Decotiis v. Whittemore,
635 F.3d 22, 36 (1st Cir.2011). The "clearly established right must be defined with
specificity." City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019).
Reasonableness is "judged from the perspective of a reasonable officer on the scene,
rather than with the 20/20 vision of hindsight." Wheeler, 2014 WL 1908931, at *1
("The calculus of reasonableness must embody allowance for the fact that law
enforcement agents are often forced to make split-second judgments . . . ."). "We do

not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." White v. Pauly, 137 S. Ct. 548, 551 (2017) (internal quotations and citations omitted). Unless the Plaintiffs have pleaded facts that the unlawfulness of Officer Smith's conduct was clearly established at the time he shot the dog, then Officer Smith is entitled to qualified immunity.

"The government retains a strong interest in allowing law enforcement officers to protect themselves and the citizenry from animal attacks. Thus, courts have generally held that no unreasonable seizure may be found where an officer has killed a dog that posed an imminent threat." Dziekan v. Gaynor, 376 F. Supp. 2d 267, 271 (D. Conn. 2005) (internal citations omitted). That is what happened here - an unleashed dog (Pit bull) approached an officer at 10:30 pm. The law permits, a reasonable officer to respond in the manner in which Officer Smith responded. See generally Wheeler, 2014 WL 1908931, at *1. Finding that Officer Smith acted as a reasonable officer in this situation retains the strong interest in allowing police officers to protect themselves, and others, from animal attacks. Dziekan, 376 F.Supp.2d at 271. Plaintiffs admit that their dog got free from them and "left the front door and out the front gate of the property." (Complaint at ¶ 12.) Plaintiffs also admit that their unleashed dog for who they were shouting to return went in the "direction of Officer Smith and other police officers." (Id. at ¶ 12.) Officer Smith's split-second judgment resulted in the death of a dog, but it was not clearly

established under § 1983 that he could not defend himself in that situation.

Plaintiffs' entire claim hinges on their legally unsupported assertion that Officer

Smith was required to "attempt[] non-lethal actions to secure" Plaintiffs' dog before

discharging his firearm.  (Id. at ¶ 15 (alteration to original).)  Plaintiffs cannot meet

their burden of establishing that the right in question was sufficiently clear that a

reasonable officer would have understood that what he was doing violated that

right in this particular scenario.  Accordingly, Officer Smith is entitled to qualified

immunity on Plaintiffs' constitutional claim.

### C. Officer Smith is Entitled to Common Law Immunity on Plaintiffs' M.G.L. c. 272, § 85A claim.

Under chapter 272, section 85A of the Massachusetts General Laws,

"[w]hoever with wrongful intent kills, maims, entices or carries away a dog . . . shall

be liable in tort to its owner for three times its value." Mass. Gen. Laws ch. 272, §

85A.  Massachusetts courts have long recognized "common law" immunity for public

officials performing discretionary acts in good faith.  "At common law, however, a

public official, exercising judgment and discretion, is not liable for negligence or

other error in the making of an official decision if the official acted in good faith,

without malice, and without corruption."  Nelson v. Salem State College, 446 Mass.

525, 537 (2006) (common law immunity applied to invasion of privacy claim where

"public employees responsible for investigating criminal activity on the college

campus" used "a surveillance camera where suspected criminal activity was taking

place"); see also Cachopa v. Town of Stoughton, 72 Mass. App. Ct. 657, 665 (2008).

As the SJC held in the seminal case on this issue:

> Upon full consideration of all of the judicial precedents cited above, and of others too numerous to cite, we hold that the law of the Commonwealth should be, and therefore is, that if a public officer, other than a judicial officer, is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

Gildea v. Ellershaw, 363 Mass. 800, 820 (1973).  Common law immunity likewise applies to discretionary actions.[2]  See Duarte, 405 Mass. at 43.  The doctrine also extends to intentional torts alleged to have been committed by public officials, as they fall within the scope of "other error."  See, e.g., South Boston Betterment Trust Corp. v. Boston Redevelopment Authority, 438 Mass. 57, 69 (2002).

In determining whether common law immunity applies, "[t]here is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare."  Foster from Gloucester, Inc. v. City Council of Gloucester, 10 Mass. App. Ct. 284, 294 (1980).  In Foster v. McGrail, the federal District Court relied on Gildea and Duarte to apply common law immunity to shield a correctional officer from an excessive force and battery

---

[2] A discretionary decision in the common law immunity context is distinct from and broader than a "discretionary function" under the Massachusetts Tort Claims Act, M.G.L. c. 258, § 10(b).  See Hancock v. Town of Wakefield, 1996 WL 490175, at *3 (Mass. Super. Ct. 1996) (Brassard, J.) ("when the question is not an exception to governmental liability under the Tort Claims Act but rather an issue of immunity for an individual government employee, the concept of a 'discretionary function' should be interpreted more broadly . . . .").  In Hancock, the Court found that a police chase was discretionary for purposes of immunity even though it is not a discretionary function under § 10(b).  Id.

claim brought by an inmate.  844 F. Supp. 16, 26-29 (D. Mass. 1994) ("Under the rule of common law immunity I derive from <u>Gildea</u> and <u>Duarte</u>, the negligent act of a public official in the course of exercising discretion is not actionable").

Absent factual allegations to establish that the  the public officer acted with malice, the public officer is entitled to common-law immunity.  <u>Id.</u> (Citing <u>Cachopa v. Stoughton</u>, 72 Mass. App. Ct. 657, 665 (2008)). "Bad faith" suggests more than negligence, it is a "breach of a known duty through some motive of interest or ill will" or a "conscious doing of wrong."  <u>Spiegel v. Beacon Participations</u>, 8 N.E.2d 895, 907 (Mass. 1937). "Malice" is an intentional, wrongful act that is done without just cause or an excuse. <u>Brothers v. Town of Millbury</u>, No. CIV.A. 14-10122-TSH, 2014 WL 4102436 (D. Mass. Aug. 14, 2014). "Conclusory allegations of bad faith or malice are not enough" to overcome the presumption of common-law immunity for public officers in Massachusetts. <u>Nasir</u>, 2020 WL 1027780, at *9 (internal quotations omitted) (citing <u>Najas Realty, LLC v. Seekonk Water Dist.</u>, 821 F.3d 134, 145 (1st Cir. 2016)).

Officer Smith is entitled to common-law immunity because the Plaintiffs have not alleged facts to support an allegation that Officer Smith acted with malice. At the outset, there is a strong presumption in favor of the argument that Officer Smith, in his capacity as a police officer, acted without malice. <u>Foster from Gloucester</u>, 10 Mass. App. Ct. at 294.  The Plaintiffs alleged only that Officer Smith did not employ any other non-lethal actions to secure the unleashed dog coming toward him at night. <u>Id.</u> Plaintiffs do not allege facts that would allow a jury to infer

Officer Smith acted with ill will or without cause. <u>Spiegel</u>, 8 N.E.2d at 907;

<u>Brothers</u>, 2014 WL 4102436 at *1. There is no existing relationship between Officer

Smith and Plaintiffs and no interaction that could demonstrate malice of ill-will.

The facts, as alleged, are that the dog approached Officer Smith late at night.  The

Plaintiffs allegations of malice and bad faith are conclusory and are insufficient to

overcome the strong presumption in favor of Officer Smith's common law immunity.

<u>Nasir</u>, 2020 WL 1027780, at *9.

### D.    Plaintiffs Do Not Have a Claim for Intentional Infliction of Emotional Distress Claim.

Ordinarily, a claim of intentional infliction of emotional distress requires the

plaintiff to demonstrate they have suffered physical harm. <u>Agis v. Howard Johnson</u>

<u>Co.</u>, 355 N.E.2d 315, 317 (Mass. 1976). However, where an intentional infliction of

emotional distress claim does not allege bodily injury, it must be shown:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct ...; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community" ...; (3) that the actions of the defendant were the cause of the plaintiff's distress ...; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

<u>Id.</u> 315 N.E.2d at 318-19 (adopting Section 46 of the *Restatement (Second) of the*

*Law of Torts* (1965) and stating that requirements are "realistic safeguard" against

false claims); <u>see also</u> <u>Foley v. Polaroid Corp.</u>, 508 N.E.2d 72 (Mass. 1987); <u>Polay v.</u>

<u>McMahon</u>, 10 N.E.3d 1122, 1128-29 (Mass. 2014) ("The standard for making a claim

of intentional infliction of emotional distress is very high."); <u>Caputo v. Bos. Edison</u>

<u>Co.</u>, 924 F.2d 11, 13 (1st Cir. 1991). The conduct alleged in the complaint must be

10

"extreme and outrageous." <u>Polay</u>, 10 N.E.3d at 1128-29. Conduct is "extreme and outrageous" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Foley</u>, 508 N.E.2d at 82.

> Thus, liability cannot be predicated upon "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," nor even is it enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"; rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

<u>Foley</u>, 508 N.E.2d at 82 (quoting *Restatement (Second) of Torts § 46*); <u>see, e.g.</u>, <u>Agis</u>, 355 N.E.2d at 315. Where a police officer is merely carrying out their obligations as a law enforcement officer, his conduct "as a matter of law cannot be deemed extreme and outrageous." <u>Sena v. Commonwealth</u>, 629 N.E.2d 986, 994 (Mass. 1994).

Since the Plaintiffs have only alleged mental health issues, and not physical harm, it must be established that Officer Smith's conduct was extreme and outrageous. <u>Agis</u>, 355 N.E.2d at  318-19. Here, Officer Smith's conduct was not extreme and outrageous. When confronted with an unleashed dog approaching him on the street at night, Officer Smith did not act "so extreme in degree, as to go beyond all possible bounds of decency." <u>Foley</u>, 508 N.E.2d at 82. At the time, Officer Smith acted in his capacity as a law enforcement officer which does not rise to the level of extreme and outrageous. <u>Sena</u>, 629 N.E.2d at 994.

11

Additionally, the Plaintiffs do not sufficiently allege extreme and outrageous conduct. Similarly decided in Polay v. McMahon, the Plaintiffs' complaint should be dismissed because it contains only conclusory statements that their emotional distress was "extreme and outrageous." 10 N.E.33 at 1130. Such a recitation of the extreme and outrageous element in a claim of intentional infliction of emotional distress is not an allegation of fact, and thus not sufficiently alleged. Id. (finding no error in dismissal of intentional infliction of emotional distress claim); see also Galiastro v. Mortgage Elec. Registration Sys., Inc., 4 N.E.3d 270, 281 (Mass. 2014) ("Bare assertion will not suffice.").

Even if the Plaintiffs sufficiently pleaded that Officer Smith's conduct was extreme and outrageous, their intentional infliction of emotional distress claim must be dismissed because "Massachusetts has not extended recovery of damages in tort for emotional distress resulting from an injury to a third party to include persons who suffer the loss of a companion animal." Rule v. Fort Dodge Animal Health, Inc., 604 F. Supp. 2d 288, 305 (D. Mass. 2009), aff'd, 607 F.3d 250 (1st Cir. 2010); see Sneade v. Rojas, No. CIV.A. 11-40061-TSH, 2014 WL 949635, at *7 (D. Mass. Mar. 10, 2014) ("It is not clear that Massachusetts common law would recognize a claim for intentional infliction of emotional distress for the killing of a pet."); Krasnecky v. Meffen, 777 N.E.2d at 1288 (in denying emotional distress claim for death of sheep, court added "[o]ur decisional law permits certain persons to recover damages in tort for emotional distress resulting from an injury to a third party."). In the Commonwealth, bystanders may only recover for negligent

infliction of emotional distress when they have "suffered substantial physical injuries as well as emotional distress" as a result of serious physical injury to a close family member. Payton, 437 N.E.2d at 179; see also Dziokonski v. Babineau, 380 N.E.2d 1295 (Mass. 1978); Krasnecky v. Meffen, 777 N.E.2d at 1288 ("For the most part, the class of persons allowed such recovery has been limited to '[a] parent of or another person closely related to a third person directly injured by the tortfeasor's conduct.'") (quoting Migliori v. Airborne Freight Corp., 690 N.E.2d 413 (Mass. 1998)). Because the law does not permit an emotion distress claim for the loss of an animal, Plaintiffs' intentional infliction of emotional distress claim must be dismissed.

In addition, for the reasons stated above, and incorporated herein by reference, common-law immunity would also apply to Plaintiffs' intentional infliction of emotional distress claim.

## IV.   CONCLUSION

For the foregoing reasons, Daniel Smith requests that the Court dismiss Counts I, II, and IV with prejudice.

Date:  October 5, 2021                           Respectfully submitted,

                                                 **DANIEL SMITH,**

                                                 By his attorneys:

Henry C. Luthin

Corporation Counsel

*/s/ Nieve Anjomi*
Nieve Anjomi (BBO#651212)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4098
nieve.anjomi@boston.gov


### Certificate of Service

I, Nieve Anjomi, hereby certify that on October 5, 2021, a true copy of the above document will be served upon all parties of record via this court's electronic filing system and to those non-registered participants via email.

*/s/ Nieve Anjomi*
Nieve Anjomi

14