UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHIRLEY A. GOODE and SEAN GOODE, | ) |
| Plaintiffs, | ) |
| v. | ) C.A. No.1:21-CV-11457-DJC |
| DANIEL SMITH and CITY OF BOSTON | ) |
| Defendants. | ) |

**DANIEL SMITH'S MOTION *IN LIMINE* TO EXCLUDE, OR LIMIT, TESTIMONY OF DR. JAMES CROSBY**

Defendant, Daniel Smith ("Officer Smith" or "Smith") moves *in limine* to exclude, or limit, the testimony of Dr. James Crosby. Smith moves to exclude or limit the testimony of Plaintiffs expert for the following reasons.

**I.  FACTUAL AND PROCEDURAL BACKGROUND.**

On July 2, 2021, Plaintiffs filed their complaint in Massachusetts Superior Court. Defendants removed the action to Federal Court. On March 21, 2023 the City of Boston was dismissed from the case. (See ECF No. 31.) During discovery, Plaintiffs' counsel retained and disclosed their expert witness, Dr. James Crosby ("Dr. Crosby"), a certified behavior consultant expert witness and retired police lieutenant.

On June 16, 2023 Smith was provided with Dr. Crosby's preliminary expert report. (See Exhibit 1.) Smith has not received an updated or final report. Based upon Dr. Crosby's preliminary expert report, he offers twelve (12) opinions that he plans to opine on at trial. The following is a summary of what Dr. Crosby is expected to testify to:

1. Officer Smith used excessive and needless force in shooting the dog. (See Exhibit at ¶ 2 under Opinions section.)

1

2. Officer Smith failed to use any form of less, or non-lethal, force toward the dog before escalating to deadly force by using his firearm, which failed to follow the Boston Police Department's policy on use of force. (Id. at ¶ 3.)

3. Officer Smith misled the Firearm Discharge Investigation Team ("FDIT") investigator because he did not testify in his FDIT interview that he was carrying O.C. spray at the time he discharged his firearm so the FDTI investigators findings determined that there was no less means available to deter the threat of the dog. (Id. at ¶ 4.)

4. Officer Smith's use of the deadly force was reckless and likely to cause injury to a civilian or other officer because it was a chaotic scene with people standing close by. (Id. at ¶ 5.)

5. The dog was looking for a familiar, trusted person and that is why it ran across the street toward Smith because there could have been a familiar person behind him. This is also the reason the dog ignored the crowds and never diverted toward any of the officers. (Id. at ¶ 6.)

6. The dog was panicked and its behavior was consistent with looking for a familiar, safe person. (Id. at ¶ 7)

7. The dogs fearful reaction is consistent with Plaintiff, Ms. Shirley Goode's testimony that the dog was sensitive to loud noises and would shake. (Id. at ¶ 8.)

8. Officer Smith's description of the dog "growling, panting, and breathing heavily" would also be consistent with the dog being scared. (Id. at ¶ 9.)

9. Officer Smith did not state the dog was trying to bite him nor did any police officers state that the dog tried to bite him, which contradicts Smith's use of deadly force to seeing the dog. (Id. at ¶ 10.)

10. Officer Smith identifying the dog as a pitbull should not have been part of his analysis to use deadly force because pitbulls are usually incorrectly identified. (Id. at ¶ 11.)

11. Officer Smith testified that he never received animal encounter training from BPD. BPD should have incorporated a policy and training on animal encounters. (Id. at ¶ 12.)

12. BPD has failed to meet its obligation and responsibility to the public to exercise good judgment and follow best professional practices because it has not provided or required, animal encounter trainings to its officers and did not provide it to Officer Smith after this incident. (Id. at ¶ 13.)

## II. LEGAL ARGUMENT.

Under Fed. R. Civ. P. 26(a)(2)(B), the proposed expert is required to provide a signed report, which contains the basis and reasons for his opinions, and the facts or data considered by the witness informing them among other requirements. The proposed expert's report fails to satisfy this rule.

Further, the trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). "To determine whether testimony is sufficiently reliable[,] a district court must determine whether it is based on sufficient facts or data, was the product of reliable principles and methods, and whether the expert reliably applied the principles and methods to the facts of the case." Packgen v. Berry Plastics Corp., 847 F.3d 80, 85 (1st Cir. 2017) (alteration to original) (internal quotations omitted).

In additional to being reliable, an expert's testimony must be relevant and reliable. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. at 591-595. "To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or

determine a fact in issue." Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (internal citation omitted). "[T]he Daubert court set forth five non-exclusive factors for trial courts to consider when evaluating the reliability of proposed expert testimony. First, the court should consider whether the expert's technique or theory can be or has been tested. Valdivia, 680 F.3d at 57 (citing Daubert, 509 U.S. at 593–95.). Second, the court should ponder whether the technique or theory has been subject to peer review and publication. Third, the court should determine what the known or potential rate of error of the technique or theory is when applied. Fourth, the court should consider whether the expert-maintained standards or controls. Fifth, the court should review whether the technique or theory has been generally accepted in the scientific community." United States v. Casey, 928 F. Supp. 2d 397, 398 (D.P.R. 2013) citing Valdivia, 680 F.3d at 57. (internal quotes omitted.)

**A. Dr. Crosby should be excluded from testifying because his opinions are not reliable.**

Dr. Crosby's opinions do not meet the non-exclusive factors under Daubert for his opinions to be reliable. In his preliminary report, Dr. Crosby does not cite to any peer review or publications that he relied on to come to conclusions of his opinions. The one study Dr. Crosby relies on is an evaluation of pepper spray from the National Institute of Justice from 1997. Other than that one study, Dr. Crosby formed his opinions around the evidence in this case that was provided to him by Plaintiffs' counsel. The one study that Dr. Crosby relies on is also outside the scope of what he is qualified in. Therefore, Dr. Crosby's opinions are unreliable and he should be excluded from testifying at trial.

**B. Dr. Crosby is only an expert in dog aggression.**

Dr. Crosby expertise appears to be in dog aggression. Notwithstanding Dr. Crosby's background and experience as a police lieutenant, Dr. Crosby appears to be providing opinions on

Smith's actions and the credibility of his testimony. Besides Dr. Crosby's experience with animal aggression, Dr. Crosby is not a use of force expert. His opinions are therefore outside the scope of his expertise.

Specifically, the topics that Dr. Crosby should not be allowed to testify on are 2, 3, 4, 5, 10, 11, 12, and 13.[1] Given that Dr. Crosby is not a use of force expert, the topics covered in the following are all outside the scope of his expertise: 2, 3, 4, 5, 10, and 11. There is no basis provided for which Dr. Crosby relied upon to form the opinion that Smith used excessive force. Furthermore, in topic 2, Dr. Crosby misstates the BPD rule on use of force, as that rule does not apply to use of force on animals. BPD rule 303(b)[2] states as follows:

> "[a] law enforcement officer shall not use deadly force ***upon a person*** unless de-escalation tactics have been attempted and failed or are not feasible based on the totality of the circumstances and such force is necessary to prevent imminent harm to a person and the amount of force used is proportionate to the threat of imminent harm."

Moreover, Topics 12 and 13 are also not in Dr. Crosby's expertise. These two opinions are about the trainings and policies that the BPD should have incorporated. The City is no longer in this case and is not a defendant a trial. The City was dismissed on March 21, 2023. Regardless, these two opinions touch on the policies and procedures of the BPD when there was never a <u>Monell v. Department of Social Services of City of New York,</u> 436 U.S. 658, 692 (1978) claim in this

---

[1] Smith references the topics as noted in Exhibit 1 under the opinions section.
[2] BPD rule 303(b) is attached to this motion as <u>Exhibit 2</u>.

case. The City was being sued for negligence pursuant to the Massachusetts Tort Claims Act and negligent infliction of emotional distress.

### C. Dr. Crosby's opinion relies on speculation

In Topic 4, Dr. Crosby speculates that the FDIT investigator only found Smith's use of his firearm within the bounds of BPD rules because Smith did not disclose that he was carrying OC spray. There is not evidence in the record that shows that is why the FDIT investigator came to that conclusion.

In Topic 6, there is no evidence in the record that the dog was looking for someone familiar, trusted, or safe to it. There is no evidence in the record of there being anyone that the dog knew behind Officer Smith, so this opinion is drawn off of pure speculation. Dr. Crosby further comes to the opinion that the dog was looking for someone familiar based on Plaintiff's testimony. Just because the testimony of the dog's gait was testified to, it was not pursuant to the dog seeing someone familiar beyond Officer Smith. Ms. Goode testified that the dog slipped under her arm when she was sitting on the step.

Topic 10 also contains a conclusion drawn from speculation. Topic 10 speculates that Officer Smith shot the dog just because the dog was running at him. Further, topic 10 comments on how there is no evidence that Smith ever stated that the dog was going to bite him. This is not relevant for a witness to opine on, but rather for Plaintiffs' counsel to establish at trial and argue to the jury.

Topic 11 also should not be testified to because it assumes facts that are not in evidence and relies on speculation.

To the extent this Court finds that Dr. Crosby is qualified to testify, Smith asks this Court to limit Dr. Crosby's testimony to topics listed as numbers 8 and 9 in his preliminary report. (See Exhibit 1.)

### III. CONCLUSION.

WHEREFORE, for the reasons set forth above, Smith respectfully requests that this Honorable Court grant his motion, exclude Dr. James Crosby's testimony, or limit his testimony, and grant such other and further relief as this Court deems just and proper

Dated: June 7, 2024

Respectfully submitted,

**DEFENDANT,
DANIEL SMITH**

By his attorneys:

Adam N. Cederbaum
Corporation Counsel

*/s/ Bridget I. Davidson*
Bridget I. Davidson (BBO#710244)
Assistant Corporation Counsel
Adam Johnson (BBO#679142)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-3238 (Davidson)
(617) 635-4097 (Johnson)
Bridget.Davidson@boston.gov
Adam.Johnson@boston.gov

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I, Bridget I. Davidson., hereby certify that, in accordance with Local Rule 7.1(a)(2), counsel for the parties conferred by telephone on June 7, 2024 and attempted in good faith to resolve or narrow the issues raised by this motion but were unable to do so.

*/s/ Bridget I. Davidson*
Bridget I. Davidson

**CERTIFICATE OF SERVICE**

       I, Bridget I. Davidson, hereby certify that on June 7, 2024, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants.

                                              */s/ Bridget I. Davidson*
                                              Bridget I. Davidson