## USE OF DEADLY FORCE

<u>Statement on Use of Force:</u>

The Boston Police Department is committed to de-escalating incidents to negate the need for the use of force.  When force is necessary the Boston Police Department is committed to using only the amount of force that is reasonably necessary to overcome the resistance offered.   The Boston Police Department is equally committed to preventing unnecessary force, ensuring accountability and transparency, and building trust with our community.  The Boston Police Department respects the inherent life, liberty, dignity, and worth of all individuals by preserving human life, and minimizing physical harm and the reliance on use of force.

Pursuant to **An Act Relative to Justice, Equity and Accountability in Law Enforcement in the Commonwealth (Chapter 253 of the Acts of 2020) Section 30 (14) (a,b,c):**

a. "A law enforcement officer shall not use physical force upon another person unless de-escalation tactics have been attempted and failed or are not feasible based on the totality of the circumstances and such force is necessary to:
- Effect the lawful arrest or detention of a person;
- Prevent the escape from custody of a person; or
- Prevent imminent harm and the amount of force used is proportionate to the threat of imminent harm:
    - Provided, however, that a law enforcement officer may  use necessary, proportionate and non-deadly force in accordance with the regulations promulgated jointly by the POST Commission and the municipal police training committee *(and taught at the Boston Police Academy)*.

b. A law enforcement officer shall not use deadly force upon a person unless de-escalation tactics have been attempted and failed or are not feasible based on the totality of the circumstances and such force is necessary to prevent imminent harm to a person and the amount of force used is proportionate to the threat of imminent harm.

c. A law enforcement officer shall not use a chokehold.  A law enforcement officer shall not be trained to use a lateral vascular neck restraint, carotid restraint or other action that involves the placement of any part of law enforcement officer's body on or around a person's neck in a manner that limits the person's breathing or blood flow."

The Boston Police Department is committed to de-escalation tactics pursuant to **MGL Chapter 6E Section 1:**

**"De-escalation tactics"**, proactive actions and approaches used by an officer to stabilize a law enforcement situation so that more time, options and resources are available to gain a person's voluntary compliance and to reduce or eliminate the need to use force including, but not limited to, verbal persuasion, warnings, slowing down the pace of an incident, waiting out a person, creating distance between the officer and a threat and requesting additional resources to resolve the incident, including, but not limited to, calling in medical or licensed mental health professionals, as defined in subsection (a) of section 51½ of chapter 111, to address a potential medical or mental health crisis.

When tactically safe and feasible, officers should give verbal warnings or commands when deadly force is going to be used. In some cases there may not be an opportunity to give verbal warnings or commands.

Duty to Intervene:

1. Police officers are reminded of Rule 113 Public Integrity Policy, Sec. 5 Cannon of Ethics, Number Nine; and

2. **An Act Relative to Justice, Equity and Accountability in Law Enforcement in the Commonwealth (Chapter 253 of the Acts of 2020) Section 30 (15) (a,b):**

   a. "An officer present and observing another officer using physical force, including deadly force, beyond that which is necessary or objectively reasonable based on the totality of circumstances, shall intervene to prevent the use of unreasonable force unless intervening would result in imminent harm to the officer or another identifiable individual.

   b. An officer who observes another officer using physical force, including deadly force, beyond that which is necessary or objectively reasonable based on the totality of the circumstances shall report the incident to an appropriate supervisor as soon as reasonably possible but not later than the end of the officer's shift. The officer shall prepare a detailed written statement describing the incident consistent with uniform protocols. The officer's written statement shall be included in the supervisor's report."

## INTRODUCTION

This rule is issued to provide guidelines and regulations governing the use of deadly force by members of the Department, to ensure the safety of our police officers and the public, and to establish procedures for the orderly investigation of firearm discharges. Its provisions are effective immediately, superseding all previously issued rules, regulations, orders, bulletins and directives regarding the use of deadly force by Boston police officers.

In the establishing of these regulations it is understood that they will not likely cover every conceivable situation which may arise. In such situations officers are expected to act with intelligence and sound judgment, attending to the spirit of the rule. Any deviations from the provisions of Sections 5, 6, 7, or 8 of this rule shall be examined on a case by case basis.

**Note:** Weapons and ammunition coming into the custody of Police Department personnel shall be handled in accordance with the provisions of Rule No. 311, Procedures for the Firearms Analysis Unit.

**Sec. 1 Definitions:** For the purpose of this rule, the following definitions will apply:

Deadly Force is that degree of force likely to result in death or great bodily injury. The discharge of a firearm toward a person constitutes the use of deadly force even if there is no express intent to cause great bodily injury or death.

Great bodily injury means bodily injury which creates a substantial risk of death or which is likely to cause serious injury, permanent disfigurement or loss, or extended impairment of the function of any bodily member or organ.

Immediate danger of death or great bodily injury includes circumstances under which (1) such a danger exists in reality, or (2) such a danger is apparent, and the officer is unable to affirm or disaffirm its actual existence.

Prudence means using cautious, discreet or shrewd action and having due regard for the rights of citizens while maintaining an awareness of the responsibilities of acting as a police officer. Reasonableness is moderate and/or fair action within reason, suitable to the confrontation.

The Investigating Officer in Charge (IOIC) is the Detective Superior Officer of the Firearm Discharge Investigation Team so designated by the FDIT Incident Coordinator and assigned to investigate the facts of the incident and to determine if the use of deadly force was justifiable.

**Sec. 2 General Considerations:** The primary purpose for which a sworn member of the Department is issued a firearm and trained in its use is the protection of life and limb, both theirs and that of every other person needing such protection. Although the firearm is a necessary weapon for present-day policing, it's potential to inflict death or great bodily injury mandates that it be used within clearly-defined limits. This rule establishes those limits.

In the interests of personal safety, police officers must seek to gain and maintain a tactical advantage over persons known or suspected to be armed. Officers seeking to maintain the advantage over a subject suspected of being armed are in a difficult position; they must be prepared to use a firearm should it be necessary, yet show the restraint required to ensure the propriety of their actions.

The situation demands the utmost ability to think clearly, quickly and decisively and to use the firearm in a safe and effective manner.

The Boston Police Department recognizes its legal duty to protect the rights of all individuals to due process of law and a fair trial. Its members are thereby bound to refrain from any use of force that unnecessarily tends to administer punishment at the hands of a police officer.

The responsibility for punishment of criminal offenders rests solely with duly constituted courts of law and penal institutions and is by no means extended to the police.

**Sec. 3 Training and Qualification:** Police officers in this Department will be held accountable for proficiency as well as compliance with Department policy in the use of firearms. All sworn members of the Department are responsible for maintaining a degree of expertise in the use and handling of all firearms approved for their carrying. Specifically, sworn members authorized to carry a firearm shall qualify with their issued firearm(s) on a course of instruction approved by the Massachusetts Criminal Justice Training Council at least twice each year – once during the period from January 1st – June 30th and once during the period from July 1st – December 31st. A qualifying score of 80% or higher is required. When members of the Department are issued a new weapon, they shall qualify at the Department range in the use of that weapon prior to resuming street duties. This shall not apply to the emergency use of a comparable spare weapon issued on a temporary basis.

In the event an officer fails to qualify, the officer will be temporarily re-assigned to the Department Range. It will be the responsibility of the Commanding Officer of the Department Range to ensure that the officer's firearm is taken from them until such qualification is achieved. Any officer who, after such intensive training as determined by the Commanding Officer of the Department Range, has still failed to qualify will be subject to reevaluation as to their fitness to continue to perform the duties of a police officer. Under no conditions shall an officer who fails to qualify be allowed to perform any street police duties. Frequently, officers have activated themselves during off-duty situations where there is a need to draw a personal firearm and the possibility exists to use such weapon. On self activation, the officer's actions are guided by all Departmental rules and regulations, hence there is a need to show familiarization with any personal weapon which is carried while off-duty.

Members of the Department who are licensed to carry firearms pursuant to M.G.L. c. 140, § 131 and who own and carry a personal firearm while off-duty shall fire a familiarization course as designed by the Commanding Officer of the Department Range. This course will be fired during regular qualification times and police officers shall provide their own ammunition.

Officers complying with this portion of the rule will notify their Commanding Officer of their intent to do so and shall be authorized to carry more than one weapon while on duty for the sole purpose of attending the familiarization course at the Department Range.

This authorization shall be temporary and will only allow the officer to carry the off-duty weapon to and from the range. The off-duty weapon shall be secured in the District gun locker prior and subsequent to completion of the familiarization course.

**Sec. 4 Security and Maintenance of Department Firearms:** Members of the force shall take all reasonable precautions to ensure that weapons issued to them by the Department are protected from loss, misuse or theft.

Members are responsible for keeping their issued weapons clean and in good working order. A weapon which malfunctions shall be returned to the Boston Police Range forthwith.

**Sec. 5 Pointing Firearms:** Officers shall only point a firearm at a person when reasonably justified under the totality of the circumstances. While officers should not point a weapon unless they are prepared to use it, the fact that they have done so must not be interpreted as an obligation to fire.

**Sec. 6 Discharge of Firearms:** The law permits police officers to use reasonable force in the performance of their duties but only to the degree required to overcome unlawful resistance. **Boston Police officers are instructed, when tactically safe and feasible, to exhaust all alternatives before using deadly force. This includes de-escalation and verbal commands.** This doctrine of "reasonable use of force" applies to the use of firearms as well as to non-lethal force. Also, because of their destructive potential, the use of firearms must be further restricted to the purpose for which they are issued, that of protecting life and limb. The discharge of a firearm by a member of the Department is permissible only when:

A. There is no less drastic means available to defend oneself or another from an attack or imminent attack which an officer has reasonable cause to believe could result in death or great bodily injury, or

B. There is no less drastic means available to apprehend a fleeing suspect when the officer has probable cause to believe that: (1) the suspect has committed a felony during the commission of which they inflicted or threatened to inflict deadly force upon the victim, or (2) that there is substantial risk that the suspect in question will cause death or great bodily injury if their apprehension is delayed, or

C. There is no less drastic means available to kill a dangerous animal or one so badly injured that humanity requires its removal from further suffering.

Officers who find it necessary, under the provisions of this rule, to discharge firearms shall exercise due care for the safety of persons and property in the area and shall fire only when reasonably certain that there is no substantial risk to bystanders.

**Sec. 7 Warning Shots and Signals:** Firearms shall not be used as a signaling device. A firearm shall not be used to summon assistance or to give signals or to warn a fleeing suspect to stop. This does not mean that officers may not discharge their firearm without the intent to cause death or disable if in their best judgment there is no alternate method of convincing a would-be attacker that they are ready and able to defend themselves or others if the potential threat is not discontinued.

**Sec. 8 Moving/Fleeing Vehicles:** Firearms shall not be discharged from a moving vehicle. Pursuant to **An Act Relative to Justice, Equity and Accountability in Law Enforcement in the Commonwealth (Chapter 253 of the Acts of 2020) Section 30 (14) (d):**

"A law enforcement officer shall not discharge any firearm into or at a fleeing motor vehicle unless, based on the totality of the circumstances, such discharge is necessary to prevent

imminent harm to a person and the discharge is proportionate to the threat of imminent harm to a person."

**Sec. 9 Permissible Weapons, Magazines and Ammunition:** Officers shall carry on duty only weapons, magazines and ammunition authorized and issued by the Department. Officers must carry all weapons with a fully loaded magazine, in addition to having one round in the chamber.

Officers shall keep spare magazines fully loaded. Approved Department weapons, and their respective magazine capacities, include, but are not limited to:
- Glock Model 22 – 15 Rounds
- Glock Model 23 – 13 Rounds
- Glock Model 27 – 9 Rounds with flat floorplate, 10 rounds with extended floorplate
- Glock Model 43 - 6 rounds with flat floorplate, 8 rounds with extended floor plate (for use only by personnel in an investigative capacity).
- Sig Sauer P320RX 9mm Pistol with Optional Sig Romeo 1 PRO Red Dot, one 17 and two 21 round magazines
- Sigarms .45 Caliber Pistol – 8 Rounds – Officers shall carry this weapon with the manual safety engaged at all times, except just prior to discharge, or if necessary to disengage the safety to facilitate the loading and unloading process.

The Department may selectively issue other weapons to qualified personnel, if they are deemed necessary to ensure the safety and effectiveness of police operations. Officers armed with such weapons shall use those weapons in accordance with the provisions of this rule as well as any additional guidelines given at the time of issuance.

No police officer shall accept a Department issued weapon unless he/she has qualified in its proper use. No Superior Officer shall issue a Department weapon to any other officer without first asking if the officer is qualified in its use.

A Department armorer or a Department approved armorer, at the discretion of the Commanding Officer of the Boston Police Range, are the only persons allowed to perform all repairs or modifications to Department issued firearms, magazines or other weapons.

**Sec. 10 Reporting Firearms Discharges:** All firearm discharges, except discharges which occur during Department authorized or approved firearms training, while lawfully engaged in target practice or while hunting (unless a discharge occurring during one of these three exceptions results in death, personal injury or property damage), require the submission of an incident report (1.1) which includes information relative to injuries and damage to property.
- An officer who discharges his firearm during the course of his duties shall immediately notify the Operations Division that they have been involved in a "Code 303" and request that a Patrol Supervisor respond to the scene. The officer shall make a verbal report of the discharge to the responding Patrol Supervisor. In the event that someone has been injured, officers will request medical assistance. The supervisor shall request that Operations make all appropriate notifications including the Firearm Discharge Investigation Team.

- An off-duty officer discharging a firearm in the City of Boston shall immediately notify an Operations Division Supervisor. The Operations Division shall notify the Officer in Charge of the District in which the discharge took place and the Firearm Discharge Investigation Team. The officer involved in the firearm discharge shall submit the necessary reports without delay to a Superior Officer assigned to the Firearm Discharge Investigation Team.
- An officer who discharges a weapon outside of the City of Boston shall immediately notify and make a report of the discharge to the Police Department which has jurisdiction where the discharge occurred, identify themself as being a Boston police officer and notify an Operations Division Supervisor as soon as possible. The Operations Division shall immediately notify the officer's Commanding Officer and the Firearm Discharge Investigation Team.

Officers who have discharged a firearm shall complete a BPD Form 2415 (Firearms Discharge Report) in its entirety.

**Sec. 11 Investigation of Firearm Discharges:** The manner in which police officers use firearms is an extremely critical issue to the Department, one in which the community and the courts allow little margin for error. To ensure that proper control in this area is maintained, all reported discharges of firearms by officers of this Department will be thoroughly investigated by the Firearm Discharge Investigation Team.

The Firearm Discharge Investigation Team has sole responsibility for investigating firearm discharges involving a member of the Department. Failure to cooperate with the investigation shall be grounds for disciplinary action. The foregoing does not prevent an officer from exercising their constitutionally protected rights to remain silent or to speak with legal counsel.

The District Commander of the District wherein a police officer discharges a firearm shall be responsible for assigning a Superior Officer to assist the Firearm Discharge Investigation Team in their investigation into the discharge.

In those incidents where the use of deadly force results in death, the District Attorney's Office, pursuant to the terms of M.G.L. c. 38, § 4, will assume control of the investigation. The statute reads, in part, "The District Attorney or his law enforcement representative shall direct and control the investigation of the death and shall coordinate the investigation with the office of the chief medical examiner and the police department within whose jurisdiction the death occurred."

In all instances where a Boston police officer discharges a firearm resulting in injury, the District Attorney's Office will be notified and his or her designees from the Boston Police Department will conduct an independent investigation to determine the facts of the case.

**Patrol Supervisor:**
- Shall respond immediately to a reported use of deadly force, Code 303, within his District and assume command of the investigation pending the arrival the District Commander and/or the Firearm Discharge Investigation Team.
- Shall notify the Operations Division of the firearm discharge. In turn, the Operations Division shall be responsible for making all necessary notifications.

- Shall initiate such preliminary steps as are necessary to conduct a thorough investigation and hold himself in readiness to assist the District Commander and the Firearm Discharge Investigation Team upon their arrival. In this respect, the Patrol Supervisor shall have the authority to order as many units to the scene of the firearms discharge as is deemed necessary or to take any other appropriate action to complete the task.
- Shall establish an outside perimeter around the area of the incident.
- Shall ensure that the scene is preserved pending the arrival of the Firearm Discharge Investigation Team in a manner pursuant to Rule 309, Procedures for Handling Physical Evidence and Other Property Coming into Police Custody.
- Shall take possession of the firearm which has been discharged and ensure that it is turned over to a designated FDIT investigator as soon as possible. In so doing, the Patrol Supervisor shall preserve all firearms in the condition in which they are found. The Patrol Supervisor must use extraordinary care in this respect as the firearm may still be loaded.
- In the event that more than one officer is present at a shooting incident, the Patrol Supervisor, as soon as circumstances allow, shall collect all firearms which belong to the officers who were at the scene and store them until a designated FDIT investigator can ascertain which have been fired.
  Firearms determined not to have been discharged, by a Department Ballistician, will then be returned to the police officers to whom they were issued as soon as possible.

Pursuant to Rule 405 Body Worn Camera, Sec 6.3 Collecting and Securing BWC Footage Following an Officer Involved Death, Officer Involved Shooting, or Other Use of Deadly Force (Rule 205 and/or Rule 303 Investigations):
- In accordance with Rule 205 and Rule 303, the Patrol Supervisor shall respond immediately to a death investigation or reported use of deadly force within his/her District.
- The Patrol Supervisor, as soon as circumstances allow, shall collect all BWC equipment, including department-issued mobile devices, which belong to the officers who: (1) were involved in the incident, (2) discharged their weapon, and/or (3) witnessed during the time of the officer involved death, officer involved shooting or other use of deadly force, and store the equipment in a secure compartment of his/her vehicle until the Homicide Unit or FDIT personnel arrives on scene. Once on scene, the Homicide Unit or FDIT personnel shall secure any remaining BWC equipment from involved officers and witness officers, as well as equipment already secured by the Patrol Supervisors, at the earliest opportunity. The Homicide Unit or FDIT personnel will transport the cameras to the involved officer's assigned district or the Homicide Unit for upload into the system. The BWC equipment will be returned to the officer as soon as possible following the event.
- Once uploaded, the Video Evidence Unit shall restrict video access from all users except for the Homicide Unit and/or FDIT investigators assigned to the case.

**The District Commander:**
Will respond to the scene and assume overall command of the situation pending the arrival of the Firearm Discharge Investigation Team.

Assign a Superior Officer to assist the Firearm Discharge Investigation Team and ensure that any and all District resources are made available to complete the investigation. The District Commander will have the flexibility to assign any Superior Officer to fulfill this task.

Ensure that full cooperation is extended to the Firearm Discharge Investigation Team and any designated investigators from the District Attorney's Office.

**FDIT Commander:**
Shall be responsible for ensuring that a Firearm Discharge Investigation Team is assigned to investigate all reported firearm discharges by Department personnel except discharges which occur during Department authorized or approved firearms training, while lawfully engaged in target practice or while hunting (unless a discharge occurring during one of these three exceptions results in death, personal injury or property damage).

The FDIT Commander shall have the flexibility and discretion to assign any investigators deemed appropriate as being members of the Firearm Discharge Investigation Team.

The FDIT Commander shall have ultimate responsibility for ensuring the thoroughness of any investigation regarding a firearm discharge or the use of deadly force by Department personnel.

**Firearm Discharge Investigation Team:**
- Shall respond to the scene as expeditiously as possible and immediately meet with the Patrol Supervisor and be briefed relative to the known facts surrounding the incident.
- Shall notify the Operations Division that they are taking control of the scene and the investigation. Notifications must be done "on-air."
- Shall be allowed any resources they deem necessary to conduct a complete investigation.
- Shall conduct a thorough investigation to determine the facts of the incident.
- Shall coordinate with any other simultaneous investigations.
- Shall submit a preliminary report within ten (10) days to the FDIT Commander, the Bureau Chief of the appropriate command and to the Superintendent-In-Chief. The Superior Officer in Charge of the Firearm Discharge Investigation Team shall make a recommendation in the preliminary report, based upon an assessment of the facts known, as to the justification for the use of deadly force, whether or not the firearms discharge was accidental and whether or not it involved personal injury, death or damage to personal property.

Pending this report, the Officer involved will be assigned to administrative duties in their unit of assignment. However, if the preliminary investigation indicates that the firearm discharge was justified, the Officer may be restored to regular duties, with the approval of their Commanding Officer, the Bureau Chief of the appropriate command, the Superintendent-in-Chief and the concurrence of the Police Commissioner.

The FDIT Incident Coordinator shall submit a complete and detailed report with recommendations to the FDIT Commander and to the Superintendent-in-Chief.

**Sec. 12 Disposition:** Upon receiving a report pertaining to a firearms discharge and investigation by the FDIT Incident Coordinator, the Superintendent-in-Chief may accept it or return the report with a request for further information or clarification. In every case, the authority and responsibility for final Departmental disposition of a firearms discharge incident rests solely with the Police Commissioner. Upon accepting a report and making a

final disposition in a firearm discharge case, copies of the Police Commissioner's decision shall be sent to the appropriate District, Unit and Bureau Commanders.

Gregory P. Long
Superintendent In Chief